WILLIAM M. FLETCHER *vs.* NANNIE S. DIXON.

*Action for Injury Caused by Negligent Operation of an Automobile and for Violation of Statute Regulating Automobiles—Evidence—Instructions.*

In an action to recover damages for an injury occasioned by defendant's negligent use of an automobile and in violation of a statute, by which use plaintiff's horse was frightened and caused to run away in the streets of a town, a plat, showing some of the streets and objects, offered for the purpose of making the testimony of some of the witnesses intelligible, is admissible in evidence, as is also the testimony of the surveyor who made the plat as to the distances between certain points marked thereon.

In such action, a witness acquainted with defendant's automobile, may testify that it was exceedingly noisy and was the loudest machine he ever heard.

When plaintiff's horse was made to run away by defendant's automobile and the evidence showed that the horse was spir-

ited, and that the plaintiff at the time was using reins with handholds on them, a witness was asked whether he used handholds in driving. In sustaining an objection to that question, the Court said: "We don't think it is an indication of the wildness of a horse, because there are handholds on the reins; we think that it is an illogical inference." The defendant excepted to this observation. *Held,* that the question ruled out was irrelevant, and that the jury could not have been influenced against the defendant by the remark of the Court.

In an action to recover damages for a personal injury alleged to have been caused by defendant's negligence, a witness, not a medical expert, may be asked if he had noticed any change in the physical condition of the plaintiff since the accident, and upon his answering that she had been very nervous since then, may also be asked how that nervousness manifested itself.

Some of the counts in a declaration charged that the defendant in operating his automobile had failed to comply with a statute then in force providing that when a horse being driven on a highway appears to be frightened at the approach of a motor vehicle, the person in charge of the latter shall go as far as possible to the side of the road and remain stationary until the horse passes. Other counts charged the defendant with negligence generally in the operation of his machine, in consequence of which plaintiff's horse was frightened and ran away and injured the plaintiff. *Held,* that a prayer offered by the defendant is erroneous which ignores the charge that the defendant violated the statute, and which asserts that it was incumbent upon the plaintiff to satisfy the jury that the accident was not caused by her contributory negligence.

*Held,* further, that a prayer is erroneous which instructs the jury in general terms that they must find for the defendant unless they should also find that the accident was caused by the want of some precaution which the defendant might and ought to have resorted to. This prayer also ignores the violation of the statute by the defendant.

Unless plaintiff's own evidence shows that the injury was caused
by his contributory negligence, the burden is on the defendant
to show that fact by way of defense.

There is in this case evidence legally sufficient to go to the jury
to show that the defendant was negligent in the operation of
his automobile at the time it approached and passed the
plaintiff's horse, so that the horse was frightened and caused
to run away, and the question of plaintiff's contributory neg-
ligence was properly left to the jury under the evidence.

*Decided March 31st, 1910.*

Appeal from the Circuit Court for Wicomico County
(HOLLAND and JONES, JJ.), where there was a judgment
on verdict for the plaintiff for $3,500.

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, SCHMUCKER, BURKE, THOMAS and URNER, JJ.

*Fred. H. Fletcher,* for the appellant.

*Alonzo L. Miles* and *George H. Dawson, Jr.,* for the ap-
pellee.

BOYD, C. J., delivered the opinion of the Court.

This is the second appeal in this case—a judgment which
was rendered at the first trial having been reversed, as is re-
ported in 107 *Md.,* 420. Some of the questions now pre-
sented were then disposed of, and we will not repeat the gen-
eral principles announced as applicable to such cases, but
will refer to that decision for our views. There are fourteen
bills of exception presenting rulings on the admissibility of
evidence, and the fifteenth includes the rulings on the pray-
ers. The Court granted five prayers offered by the plaintiff,
and the first, second, fourth, fifth, ninth and twelfth of the
defendant, but rejected his third, sixth, seventh, eighth,
tenth, eleventh, thirteenth, fourteenth, fifteenth and six-

teenth. It also overruled special exceptions to the plaintiff's prayers and demurrers to the declaration.

The third and fourth counts of the declaration are the same as the third and fourth in the declaration when the case was before us on the previous appeal, and as it was then determined that the demurrers to them were properly overruled, we will not further discuss them. Nor do we see any difficulty about the first and second counts.

We will consider the exceptions in the order presented by the appellant's brief. The first was to permitting the plaintiff to offer in evidence a plat showing some of the streets in Cambridge and lots, houses, and other objects on High street, where the injury complained of occurred. It was prepared by a surveyor who testified that he made it at the request of the plaintiff, but that some objects and measurements were placed on it at the request of the defendant's counsel. He said he had made the measurements and that it was the same plat which was used at the former trial.

The case was tried in Wicomico County, and as the accident occurred in Dorchester County it was undoubtedly helpful to have a plat before the jury, in order that the points spoken of by the witnesses could be properly understood. We can see no possible injury to the defendant by its admission. It is not pretended that any material changes had been made on the street between the time of the injury and when the surveyor made the measurements. There could have been no objection to the surveyor testifying to the distances between the different points he spoke of, and he in point of fact did that, after the plat was offered in evidence. If it had been offered without any explanation by the witness who made it, there might have been some cause for complaint, but the surveyor was on the stand when it was offered, and he was asked to explain it, which he did, although the defendant objected and the overruling of his objection is made the ground of exception presented by the second bill of exceptions. It is manifest that it was not intended as independent evidence, but was simply offered with the view of

immediately following it up by an explanation by the surveyor who made it. We can better understand the testimony of the witnesses called by the respective sides, who spoke of various points on the street, by having the plat in the record than we could without it, and it was evidently of service to the jury, without in any way prejudicing the appellant. Such cases as *Tome Institute* v. *Davis,* 87 Md. 591, cited by appellant, can have no application to this. That was an action of ejectment in which defense on warrant had been taken, and of course the map offered was not admissible in such case. This plat was not offered to prove any controverted locations of objects, but manifestly for the purpose of making the testimony of witnesses intelligible, as they spoke of objects, residences, etc. There was no reversible error in either of those exceptions.

As the third, fourth and fifth exceptions are not referred to in the brief, we will assume they were not intended to be pressed. Dr. Steele testified that he lived just across the street from the defendant at the time of the accident, that he was acquainted with the noise made by the defendant's automobile, frequently hearing it. He was asked to describe the noise made by it, and replied: "I have passed it, I suppose twenty-five times on the streets of Cambridge and it was an exceedingly noisy machine, and exceedingly loud machine. It was the loudest machine I have ever heard. It was more like a loud exhaust. Puff, puff, puff." That was objected to but admitted and the ruling forms the sixth exception. We in effect passed on that question on the previous appeal. The witness was speaking of that machine generally, and not simply of some special occasion or occasions. His opportunities to be acquainted with it were shown to be ample.

A witness for the plaintiff, who saw the horse running away, stated on cross-examination that Miss Dixon was using hand-holds on the reins, and was asked the question: "When you drive, do you use hand-holds?" That was objected to and the objection sustained—the Court remarking, "We

don't think it is an indication of the wildness of a horse because there are hand-holds on the reins; we think that it is an illogical inference." The counsel for the defendant excepted to that remark of the Court, stating that "they expected to show that these hand-holds are used to hold wild and spirited horses, but the Court permitted the said remarks to stand." It is very difficult for the trial Court, in ruling on the admissibility of evidence, to always avoid giving some reason for its ruling, although of course it should be careful not to say anything which might influence the jury on questions of fact which the jury must determine. The question asked the witness which was ruled out was not material, but was wholly irrelevant. The jury could not be enlightened upon anything properly before it by being told that that witness did or did not use hand-holds. The testimony showed that it was a spirited horse and a number of witnesses testified that the plaintiff did use reins with hand-holds, and why they were generally used, but it is impossible to imagine that any one of sufficient intelligence to sit on a jury could have been influenced in reaching a verdict by the remark of the Court, even if it be conceded to be technnical error in making it. If the Court was mistaken, as to the reason for using reins with hand-holds, and the reason assigned for rejecting the evidence be conceded to be wrong it was undoubtedly right in refusing to permit the question to be asked, and its reason for doing so is not material. If it be said that the appellant is not now complaining of the ruling as to the admissibility of the evidence, but of the remark made in giving the reason for the ruling, we need only add that the possibility of it affecting the jury on any question in the case is entirely too remote to authorize a reversal on that ground—especially as there was direct evidence to the effect that the horse was one of considerable spirit, and it was not necessary to know the uses of hand-holds, in order to determine what the traits of the horse were. There is no reversible error shown in that exception.

The 8th, 9th, 10th, 12th, 13th and 14th exceptions can be considered together. The eighth was to allowing a witness to state whether she had noticed any change in the physical condition of the plaintiff since the accident. The witness said that she had been very nervous since then, and, having stated she had not noticed that condition prior to the accident, was asked how that nervousness manifested itself. That question is contained in the ninth bill of exceptions. She was then asked how recently she had observed these acts and manifestations of nervousness (10th exeception), and in the 12th, 13th and 14th exceptions motions were made to strike out the answers made to similar questions asked another witness. There was no error in any of those rulings. The witnesses were shown to be well acquainted with the plaintiff, and to have had ample opportunities to observe such changes in her physical condition as they spoke of. Of course they were not competent to speak of such things as required technical knowledge, but there could be no reason for excluding evidence of the character offered.

In *Baltimore & Liberty Turnpike Co. vs. Cassell,* 66 Md. 419, a witness was asked to state what the physical condition and appearance of health of the plaintiff were after the accident, and continued to be. The Court said: "These were facts pertinent to the issue. * * * The testimony could only have been objected to on the ground that the witness was not a medical expert. It is true that medical experts may be the only witnesses competent to give the diagnosis of a disease, to testify in regard to its proper treatment *secundum artem,* and to express an opinion as to its probable duration, effects and final determination. But if ordinary individuals could not judge of a person's health from his appearance and symptoms, it would be impossible to know when it was necessary to call in a physician." See also *Wigmore on Evidence,* sections 223, 568 n. 1, 1974 and the discussions connected with those sections; 5 *Ency. of Evidence,* 696.

The eleventh exception does not seem to be urged, and we will now consider the fifteenth, which embraces the rulings

on the prayers.    The plaintiff's five prayers comply with
what we said was necessary in passing on similar prayers in
the former appeal, and we need not further discuss them.

The defendant's third prayer was sufficiently covered by
his first and second, which were granted, as well as by the
plaintiff's prayers, and there was no reversible error in re-
jecting it.    His sixth prayer was defective in several re-
spects.    In the first place it asked the Court to say that under
the pleadings and evidence in order to entitle the plaintiff to
recover, it was incumbent upon her to 'satisfy the jury by a
preponderance of evidence that the defendant "was negligent
in the management of his automobile *in approaching and
passing the horse and carriage* conveying the plaintiff," etc.,
while two of the counts relied on the defendant's failure to
comply with the statutory requirement then in force, " to go
as far as practicable to the side of the road and remain sta-
tionary until the said horse or horses or other animals have
passed a safe distance," etc.    There was evidence tending
to support the allegations in those counts, and of course this
prayer could not have been granted.    Then the prayer is sus-
ceptible of the construction that it was incumbent on the
plaintiff to satisfy the jury by a preponderance of evidence
that the accident was not caused by her contributory neg-
ligence.    If the plaintiff's testimony had disclosed such con-
tributory negligence on her part as to preclude recovery, the
defendant would not have been called upon to prove it, but
in the absence of such disclosure it was incumbent on the
defendant to prove it, as it is well settled in this State that
the burden is on the defendant to establish such a defence.

The defendant's seventh prayer was likewise properly re-
jected.    It asked the Court to say that the jury must find for
the defendant "unless they shall further find both that the
said accident was caused by the want of some precaution
which William M. Fletcher might and ought to have resorted
to," and that the plaintiff was without fault, etc.    While it
is true that the declaration contained two counts which al-
leged that the defendant "negligently and improperly oper-

ated and ran said automobile as aforesaid down said High street and negligently and improperly approached and passed said horse," etc., it also contained, as we have seen, two counts which distinctly relied on the provision in the statute. The prayer was not confined to the facts relied on in the first two counts but was general. The jury might therefore have been misled into believing that they could say whether that was a precaution which the defendant ought to have resorted to, although they were convinced that he did not comply with the requirements of the statute then in force. The Legislature saw proper to say what precautions should be taken under the circumstances stated in that section of the statute, and it was not for the jury to determine. The form of the prayer might not be objectionable in some cases, but to avoid misleading the jury it should have been confined to a recovery under the facts relied on in the first and second counts. Much of what is said in 107 *Md.* 432, in reference to the defendant's first prayer is applicable to this. So without discussing other reasons, we think the prayer was properly rejected for the one we have given.

The eighth prayer as it appears twice in the record is certainly defective. After seeking to instruct the jury that if they found that the accident was caused by the sudden fright of the plaintiff's horse in the actual passing of the automobile, and that the horse did not exhibit indications of fright in time for the defendant to have drawn to the side of the road, etc., it proceeds, "then the condition brought about by the said sudden fright was a case of emergency in which it was the duty of the *plaintiff* to determine the best means of avoiding danger, and if the jury find that the defendant used ordinary care and prudence in avoiding the sudden danger, then the defendant was not negligent in the manner in which he attempted to avoid said danger." It was probably intended to say that "it was the duty of the *defendant*," but it is twice in the record as above quoted, and is the same in the transcript to this Court from the Court below. It would be

useless therefore to pass on the prayer as if the word "defendant" was used in the place of the word "plaintiff."

What we said in the former appeal in considering the defendant's first prayer and what we have stated above in reference to the statute are sufficient to show that we think the defendant's tenth was properly rejected.

The eleventh was properly rejected as it concluded against the right of the plaintiff to recover under the pleadings and evidence although the facts relied on are only applicable to the third and fourth counts.

The thirteenth asked the Court to say there was no legally sufficient negligence on the part of the defendant to entitle the plaintiff to recover; the fourteenth that there was no such evidence to justify a recovery under the first and second counts, and the fifteenth that there was none such to authorize a recovery under the third and fourth counts. All of them were properly rejected, as there was ample evidence to go to the jury.

The sixteenth was that the plaintiff was not entitled to recover because she directly contributed to the injury complained of. That was clearly a question for the jury under the evidence in this case, and the prayer was properly rejected.

We have not felt called upon to discuss some of the questions as fully as we might otherwise have done because they were in effect determined in the previous appeal. Being of the opinion that there was no reversible error in any of the rulings, the judgment will be affirmed.

> *Judgment affirmed, the appellant to pay*
> *the costs above and below.*