## FRANCES M. MULLEN ET AL. vs. JOHN C. BRYDON, WILLIAM S. BRYDON, LOUIS B. BRYDON.

*Ejectment: pleading; Code, Art. 75, sec. 71. Tax Sales: burden of proof. Prayers: legal sufficiency of evidence; special exceptions necessary.*

Under Article 75, section 71 of the Code of Public General Laws (1904), the plea of not guilty in an action of ejectment has the legal effect of a confession of possession and eject-ment, and puts in issue the title to the premises, the right of possession and the amount of damages.          p. 558

A plaintiff in ejectment must recover, if at all, upon the strength of his own title, and not by reason of any weakness or defects of the title of the defendant. If it be shown that the defendant has a good legal title to the premises in controversy, or that the plaintiff had no legal title thereto, no recovery can be had.                              p. 559

A tax collector has no power to levy upon and sell land for taxes unless the taxes upon it were due and in arrear at the time.                                              p. 559

Md.]                      **Prayers.**

If the taxes on the land had been in fact paid prior to the levy and sale, the whole proceedings of the collector were null and void, and can confer no title on the purchaser.          p. 559

The invalidity of the proceedings for tax sales for jurisdictional defects may be availed of by collateral attack.          p. 559

In an action of ejectment to test the validity of a title to land acquired at a tax sale, the question as to whether the taxes for the years for which the property had been sold had been paid prior to the levy and sale is vital, and prayers which ignore this question are fatally defective.          p. 561

Where prayers announce correct principles of law, the legal sufficiency of evidence to support them will not be considered on appeal, in the absence of special exceptions to that effect.
                                                          p. 561

*Decided February 29th, 1912.*

Appeal from the Circuit Court for Garrett County (HEN-DERSON, J.).

The following are the prayers that were offered by the plaintiffs and the defendants, respectively, and the action of the trial Court upon each:

*Plaintiffs' 1st Prayer.*—The plaintiffs, by their counsel, pray the Court to declare as the law of this case, that the proceedings offered in evidence, under which the property was sold to Andrew Mullen, the plaintiffs' intestate and the deed from Richard T. Browning, collector, were regular and in conformity with the law and vested in said Andrew Mullen a complete title in the land described in the declaration, and if the Court, sitting as a jury, find from the evidence that the said Andrew Mullen died intestate since the institution of this suit and that the plaintiffs are the sole heirs at law of the said Andrew Mullen, then the verdict of the Court, sitting as a jury, must be in favor of the plaintiffs, unless the Court, sitting as a jury, shall further find from the evidence that the defendants were in exclusive,

uninterrupted, continuous, notorious and hostile possession of said property for at least twenty years before the institution of this suit. (*Rejected.*)

*Plaintiffs' 2nd Prayer.*—And plaintiffs further pray the Court to declare as the law of this case that there is no legally sufficient evidence in this case that the defendants or the defendants and those under whom they claim have had for a period of twenty years prior to the bringing of this suit exclusive, adverse, notorious and unbroken possession of the premises in controversy, the verdict must be for the plaintiffs. (*Rejected.*)

*Plaintiffs' 3rd Prayer.*—And that if the Court, sitting as a jury, find from the evidence that the defendants or the defendants and those under whom they claim have not had for a period of twenty years prior to the bringing of this suit exclusive, adverse, notorious and unbroken possession of the premises in controversy, then the verdict of the Court, sitting as a jury must be for the plaintiffs. (*Rejected.*)

*Plaintiffs' 4th Prayer.*—That there is no legally sufficient testimony in the case to overcome the evidence of the public sale of the property in controversy on the premises, on the 26th day of March, 1887, by Richard T. Browning, the collector, as appears in the proceedings showing such sale, offered in evidence by the plaintiffs. (*Rejected.*)

*Plaintiffs' 5th Prayer.*—If the Court, sitting as a jury, should find from the evidence that the fence lines bounding the Brydon property continued and were maintained in the same manner for over thirty years past and that the defendants and those under whom they claimed exercised the same acts of possession from 1887 to the bringing of this suit, as they exercised for fifteen years prior thereto, and that the same enclosures existed substantially the same for over thirty-five years prior to the bringing of this suit, and that on the delivery of the deed to McKay offered in evidence, said George G. McKay consented to the use of the said property in controversy as part of the yard of Wm. A. Brydon, and if the Court, sitting as a jury, shall find from the evidence

that said lots are merely building lots which were assessed to said Mullen and upon which he paid the taxes from 1887 to 1896 or to 1910, then the verdict of the Court, sitting as a jury, must be for the plaintiffs. (*Rejected.*)

*Defendants' 1st Prayer.*—The defendants ask the Court to say as a matter of law in this case, that there is no legally sufficient evidence of title from the State of Maryland in the plaintiffs to enable them to recover in this action, and that their verdict sitting as a jury must be for the defendants. (*Rejected.*)

*Defendants' 2nd Prayer.*—If the Court, sitting as a jury, finds from the evidence in this case, that the lots in controversy were in the actual, open, notorious, visible, continuous, exclusive and hostile possession of William A. Brydon up to the time of his death, and from and after his death in the like possession of Susie V. Brydon, his widow, and John C. Brydon, Louis W. Brydon, W. Schley Brydon, Richard Brydon, Howard Brydon and Edna Brydon, his only children and sole heirs at law, the said William A. Brydon and his said widow and heirs at law intending to claim and actually claiming as of right to be the sole owners of said lots, and that said possession persisted for any continuous period of twenty years subsequent to the tax sale and deed given in evidence, and prior to the institution of this suit, then the verdict must be for defendants; although the Court should further find that said lots were validly taken in execution and sold for taxes owing by George G. McKay, were purchased at said sale by Andrew Mullen and were conveyed to him by Richard T. Browning, collector, by the deed offered in evidence. (*Granted.*)

*Defendants' 3rd Prayer.*—That if the Court finds, that William A. Brydon was assessed on the tax books of Garrett county with 45 acres of land for the years 1884 and 1885, and paid taxes on said land for said years prior to the tax sale given in evidence in this case, and that said 45 acres included the lots here in controversy, then the verdict should

be for defendants, notwithstanding the Court should also find that said lots were separately and additionally assessed on said tax books in the name of George G. McKay and that said McKay did not pay taxes thereon for said years 1884 and 1885. (*Granted.*)

*Defendants' 4th Prayer.*—If the Court shall find from the evidence that the defendants, or any of them, or those under whom they claim, have had adverse, open, visible, notorious, continuous and exclusive possession of the lots in question, for twenty years or longer, before the institution of this suit, then plaintiffs are not entitled to recover, and the verdict must be for defendants. (*Rejected.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCK-BRIDGE, JJ.

*Albert A. Doub* and *John T. Mitchell,* for the appellants.

*Gilbert S. Hamill* and *William E. Walsh* (with whom was *Richard T. Semmes* on the brief), for the appellees.

BURKE, J., delivered the opinion of the Court.

In December, 1909, Andrew Mullen instituted an action of ejectment against the defendants in the Circuit Court for Garrett County for the recovery of four lots of ground, numbered 88, 89, 91 and 92 on the plat of "Bloomington" in that county. After the suit had been brought Mullen died intestate as to these lots, and the plaintiffs, who are his only heirs at law, were made parties.

The defendants appeared and pleaded the general issue plea, and took defense on warrant. Warrants of re-survey were issued, and locations were made by both parties. These locations correspond.

The plea of not guilty interposed by the defendants was in legal effect a confession of possession and ejectment, and put in issue the title to the premises, the right of possession, and the amount of damages. *Code,* 1904, Art. 75, sec. 71.

Under the issues made by the pleadings it was an indispensable condition to the plaintiffs' right to recover that they should show a legal title to the lots sued for. The plaintiff in ejectment must recover, if at all, upon the strength of his own title, and not by reason of any weakness, or defects of the title of the defendant. If it be shown that the defendant has a good legal title to the premises in controversy, or that the plaintiff had no legal title thereto no recovery can be had. These principles are elementary in the law of ejectment.

The record shows that the title of Andrew Mullen, the original plaintiff and the father of the present plaintiffs, to the lots involved in this suit was founded upon and derived from a tax sale and deed made by Richard T. Browning, the collector of State and county taxes of Garrett county. This sale was made under the provisions of Article 11 of the Revised Code of 1878, which were in force in Garrett county at the time the sale was made. The tax proceedings on their face show a substantial compliance with the requirements of law authorizing the sale.

The main grounds relied on to defeat the action were: First, adverse possession; secondly, that the sale was a nullity, because no taxes were due upon the lots at the time the collector levied upon and sold them.

It must be admitted that the collector had no power to levy upon and sell the lots, unless the taxes upon them were due and in arrear. *Condon* v. *Maynard*, 71 Md. 601. His power to sell was limited under the act to property upon which the overdue taxes had not been paid. If the taxes on the lots had been in fact paid prior to the levy and sale the whole proceedings of the collector were null and void, and conferred no title upon the purchaser. The invalidity of the proceedings for jurisdictional defects may be availed of by collateral attack upon the proceedings. *Crean* v. *McMahon*, 109 Md. 652, and cases there cited.

This case was tried before JUDGE HENDERSON in the Court below, and resulted in a verdict and judgment for the defendants, and from that judgment the plaintiff has brought this

appeal. While a great deal of evidence was introduced at the trial bearing upon the question. of adversary possession we are not at liberty to consider its legal sufficiency for the reason to be presently stated.

The evidence shows that in 1865, William A. Brydon was the owner of four military lots, containing about fifty acres each, located within the present limits of Garrett county. On the 17th of April, 1865, he conveyed these lots to the Savage and North Branch Coal Company, reserving, however, in the deed forty-five acres more or less. The four lots· in controversy were included in the forty-five acre reservation, a large part of which had been laid out in lots, streets and alleys, and formed part of the town of Bloomington, then called "Llangollen."

In July, 1875, Brydon and wife conveyed the four lots involved in this suit to George G. McKey, and the lots were assessed to him in the assessment of 1876 and were sold under the tax sale referred to for taxes due for the years 1884 and 1885.

In December, 1875, Brydon and wife executed a mortgage to the National Bank of Piedmont on the forty-five acres reserved in the deed to the Savage and North Branch Coal Company, reserving, however, from the operation of the mortgage the lots sold to McKay. The mortgaged property was sold under the foreclosure proceedings, and was bought by the bank, and was conveyed by it in 1903 to Susan V. Brydon, wife of William A. Brydon, and in 1906, Susan V. Brydon and husband conveyed the property to the defendant.

There is evidence in the record tending to show that these lots were included in the forty-five acres reserved by Brydon in the deed to the Savage and North Branch Coal Company, that they were included in the assessment of Brydon, and that the taxes thereon for years 1884 and 1885 were paid by him long prior to the tax sale. This was a matter of fact to be determined by the Court below.

At the conclusion of the case, the plaintiff submitted five prayers, all of which the Court rejected. All of these prayers ignored the vital question as to whether the taxes for the years for which the property had been sold had been paid prior to the levy and sale, and for this reason none of them could have been properly granted.

The defendants' second and third prayers were granted and their first and fourth refused. Their second prayer submitted to the Court, sitting as a jury, the finding of facts which, if found, would make a title by adverse possession in the defendants and thereby defeated a recovery. Their third prayer asserted the proposition that the verdict should be for the defendants if the Court found that William A. Brydon was assessed on the tax books of Garrett county with forty-five acres of land for the years 1884 and 1885, and paid taxes on said land for said years prior to the tax sale given in evidence in this case, and that said forty-five acres included the lots in controversy, notwithstanding the Court should also find that said lots were separately and additionally assessed on said tax books in the name of George G. McKay, and that said McKay did not pay taxes thereon for said years 1884 and 1885. These prayers announced correct principles of law, and there was no special exceptions filed to either of them, and we are not, therefore, at liberty to decide, in the absence of special exceptions, whether there was in the case any legally sufficient evidence to support the hypotheses of facts stated in either prayer.

The plaintiffs reserved one exception to the ruling of the Court on testimony; but this exception was not adverted to in the argument, nor is it alluded to in the brief, and as it does not present any matter of importance we will treat it as abandoned.

> *Judgment affirmed, with costs to the appellees above and below.*